CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 18, 2024
LAURA A. AUSTIN, CLERK
BY:
            s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LARRY ALLEN YOUNG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00258 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ABBIE NICHOLSON, | ) | By:   Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendant. | ) | |

Plaintiff Larry Allen Young, Jr., brought this action under 42 U.S.C. § 1983 against Defendant Abbie Nicholson, claiming that she violated his Fifth and Fourteenth Amendment rights. Defendant moves for judgment on the pleadings and for summary judgment. (*See* Def.'s Mot. [ECF No. 25].) For the reasons discussed below, the Court will grant Defendant's motion.

**I.**

On May 8, 2023, Plaintiff filed this action *pro se* in the Eastern District of Virginia (*see* Compl. [ECF No. 1]), and the case was subsequently transferred to this Court (Mem. Op. [ECF No. 3]). This action is one of many Plaintiff has filed regarding events occurring during his pretrial confinement on various criminal charges in Madison County and Orange County. (*See generally* Compl.; Exs. to Compl. [ECF No. 1-1]; Pl.'s Resp. Br. 4 [ECF No. 29].) His criminal charges are based in part on allegations that, in February 2022, Plaintiff broke into Defendant's father's home in Orange County, stole a firearm, and used that firearm to murder another individual in Madison County. (*See* Nicholson Decl. ¶ 5 [ECF No. 26-2].)

Plaintiff alleges that in early March 2022, Madison County Sheriff's Office Sergeant Jason Kilby attempted to interrogate him at the Albemarle-Charlottesville Regional Jail ("ACRJ"), but Plaintiff invoked his Fifth Amendment rights. (Compl. at 8.)

On March 7, 2022, Defendant, who then worked as a Madison County Sheriff's Deputy, arrived at ACRJ to transport a different inmate. (*See id.*; Nicholson Decl. ¶¶ 2, 6.) Plaintiff alleges that, after Defendant arrived, she saw Plaintiff in his cell, approached him, and began questioning him in reference to his pending Madison County criminal charges. (Compl. at 8–9.) Plaintiff further alleges that Defendant warned him:

> If you think about reporting me, [Madison County Sheriff's Office Investigator] Scotty [Woodward], [Madison County Sheriff's Office Deputy] Michael [Foster], [Madison County Commonwealth Attorney] Clarissa Berry, or [Town of Orange Police Chief Kiline] Madison, think about what happened last time.

(*Id.* at 9.) According to Plaintiff, Defendant "was referencing the blackmail, extortion, physically based assaults, and sexually based assaults" Plaintiff has alleged in his other lawsuits. (*Id.*; *see also* Exs. to Compl. (detailing the physical and mental injuries and monetary losses Plaintiff claims to have sustained at the hands of Woodward, Foster, Madison, and other law-enforcement officials).)

Plaintiff also claims Defendant advised him that, if anyone found out how he knew where her father's spare house key was, Plaintiff's daughter would be killed. (Compl. at 10.) Plaintiff further alleges Defendant threated to have his daughter killed if he "spoke out about monetary payments [he] made to law enforcement." (*Id.* at 11; *see* Exs. to Compl. 15–16 (listing $7,000 in payments Plaintiff alleges he paid to various law-enforcement offices as a result of extortion or blackmail).) Plaintiff further alleges that Defendant told him to write a signed

confession and plead guilty to the criminal charges against him or he "would be taken on a transportation detour." (*Id.* at 10.) According to Plaintiff, he told Defendant that he would confess and asked Defendant to "just ensure [his] daughter's safety." (*Id.*)

Accordingly, Plaintiff claims Defendant violated his Fourteenth Amendment rights to due process and equal protection by extorting him and improperly extracting information to be used against him in criminal proceedings. (*Id.* at 10–11.) He seeks $350,000 in damages. (*Id.* at 12.)

Defendant disputes Plaintiff's allegations and disclaims any interaction with Plaintiff at ACRJ on March 7, 2022 or on any other date. (Nicholson Dec. ¶¶ 7–8.) Defendant avers that, to interact with Plaintiff in one of the intake cells at ACRJ, she would have had to walk past the booking desk and that she has never done so. (*Id.* ¶¶ 9–10.) Defendant further avers that, because Plaintiff was in a locked intake cell, it would not have been possible to have a private conversation with him without jail staff or transport officers overhearing. (*Id.* ¶¶ 11–12.)

Plaintiff contests these averments. (Pl.'s Resp. Br. 2 [ECF No. 28].) According to Plaintiff, the booking desk is "nearly flush against a wall, which runs parallel to the desk," and "[o]fficers who 'stand' in front of the desk waiting for an inmate, walk about freely, watch tv, speak to inmates in their holding cell who recognize them (and vice versa), and even sit down behind the booking desk." (*Id.*)

Defendant's motion for judgment on the pleadings and summary judgment is now ripe for the Court's review.

## II.

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) "tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014) (citations omitted). However, "[i]f on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Summary judgment under Rule 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

"In considering a motion for summary judgment, the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959.

## III.

42 U.S.C. § 1983 authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. It follows that "[a] federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)).

Defendant challenges Plaintiff's ability to satisfy the first of these elements. She argues for judgment on the pleadings and summary judgment on the grounds that (1) Plaintiff's factual contentions do not show any violation of the Fourteenth Amendment, (2) Plaintiff's version of the facts does not support viable claim based on the violation of his Fifth Amendment right against compelled self-incrimination, and (3) her evidence forecloses Plaintiff's version of the facts. (Def.'s Br. 1–2 [ECF No. 26].) Because Defendant relies on, and the Court has not excluded, materials outside the pleadings, the Court analyzes her motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

### A. Fourteenth Amendment Equal-Protection Violation

Plaintiff claims Defendant violated his Fourteenth Amendment right to equal protection under the law "by extorting [him] to extract information that is being utilized against [him] in criminal proceedings." (Compl. 10–11.) In his response to Defendant's motion, Plaintiff argues that

> it should be very clear to this Court, and a jury, that [he] was treated differently from any other inmate similarly situated, because [he] was selectively targeted for a specific purpose.
>
> That purpose was to ensure that [he] was fearful for [his] safety and the safety of [his] family, if [he] thought about reporting the abuse [he] had endured by law enforcement.

(Pl.'s Resp. Br. 6.)

The Equal Protection Clause of the Fourteenth Amendment "prohibits states from placing people into different classes and treating them unequally for reasons 'wholly unrelated' to permissible government objectives." *Kadel v. Folwell*, 100 F.4th 122, 141 (4th Cir. 2024) (quoting *Reed v. Reed*, 404 U.S. 71, 75–76 (1971)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).

Defendant urges that Plaintiff's equal-protection claim fails as a matter of law because he has not shown he is a member of a protected class. (Def.'s Br. 8.) But membership in a protected class determines the level of scrutiny applicable to Plaintiff's claim, rather than the success of that claim. *See Kadel*, 100 F.4th at 142 ("When the state draws distinctions based on a protected classification . . . a more searching review is required."); *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").

Plaintiff has nevertheless failed to support his equal-protection claim because he has not identified any similarly situated individuals who were treated differently than he was. *See Morrison*, 239 F.3d 654; *English*, 90 F.4th at 649 (finding "no issue of triable fact" as to the plaintiff's equal-protection claim where the plaintiff "had[] not attempted to identify any better-treated individuals similarly situated to him, nor ha[d] he brought to the court any evidence suggesting such individuals might exist"). Accordingly, Defendant is entitled to summary judgment on Plaintiff's equal-protection claim.

## B. Fourteenth Amendment Due-Process Violations

Plaintiff also asserts a due-process claim based upon his allegations that Defendant pressured him into writing a false confession and pleading guilty to criminal charges. (*See* Compl. 10–11.) In his response in opposition to Defendant's motion, Plaintiff clarifies his belief that Defendant deprived him of due process by "ensur[ing] [he] did not possess the power to choose what [he] wanted to do" or "to act and speak freely against the law enforcement officials" who he claims acted unlawfully toward him. (Pl.'s Resp. Br. 4.) The Court liberally construes Plaintiff's complaint as asserting due-process claims based on: (1) Defendant's violation of his privilege against compelled self-incrimination; (2) Defendant's coercion of his guilty plea; (3) Defendant's violation of his right to free speech; and (4) Defendant's violation of his substantive due-process rights.[1] As set forth below, the Court will grant summary judgment in favor of Defendant on each of these claims.

---

[1] The Court has "a duty to look beyond the legal standards" a *pro se* plaintiff cites in his complaint "and instead apply the law applicable to his essential grievance." *Simmons v. Whitaker*, 106 F.4th 379, 387–88 (4th Cir. 2024); *see also Woody v. Nance*, 108 F.4th 232, 239 (4th Cir. 2024) ("A pro se litigant, especially an incarcerated pro se litigant who lacks access to legal resources, need not be especially specific.").

## 1. <u>Self-Incrimination</u>

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. State entities are bound by this guarantee via the Fourteenth Amendment's Due Process Clause. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). As a practical matter, the prohibition on compelled self-incrimination "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). "In addition, the right bars the introduction against a criminal defendant of out-of-court statements obtained by compulsion." *Vega v. Tekoh*, 597 U.S. 134, 141 (2022) (collecting cases).

In her brief, Defendant relies heavily on the Supreme Court's decision in *Vega v. Tekoh*, arguing that decision precludes § 1983 claims based on violations of the Fifth Amendment privilege against self-incrimination. (*See* Def.'s Br. 8–10.) But *Vega* is not dispositive of Plaintiff's claim, as it did not hold that a Fifth Amendment violation can *never* support a § 1983 claim. Rather, in *Vega*, the Supreme Court held that a violation of the "prophylactic" rules announced in *Miranda v. Arizona*, 384 U.S. 436 (1966), does not give rise to a civil claim under § 1983. *See* 597 U.S. at 138–42 (reversing the Ninth Circuit's holding that the plaintiff "could establish a violation of his Fifth Amendment right against compelled self-incrimination simply by showing that *Miranda* had been violated," noting the parties' dispute over the separate issue of "whether [the defendant] used coercive investigatory techniques to extract the statement").

*Vega* makes clear that it is precisely because *Miranda* violations are *not* Fifth Amendment violations that they cannot support § 1983 claims. *See id.* at 141 ("If a *Miranda* violation were tantamount to a violation of the Fifth Amendment, our answer would of course be different.").

Here, Plaintiff's claim is not based on Defendant's failure to offer *Miranda* warnings before allegedly eliciting his confession. (*See* Compl. 8–11.) Instead, Plaintiff alleges that he was compelled to confess based on threats of violence against his daughter and threats that he would be taken on a "transportation detour" if he did not confess. (*See id.* at 9–11.) Accordingly, *Vega* does not bar Plaintiff's claim, and the Court must still determine whether a reasonable jury could find that a Fifth Amendment violation occurred. Even viewing the facts in the light most favorable to Plaintiff, no reasonable jury could so find.

The Fifth Amendment only precludes compelled testimony against oneself in a "criminal case." *See* U.S. CONST. amend. V.  In *Chavez v. Martinez*, 538 U.S. 760 (2003), a plurality of the U.S. Supreme Court held that a § 1983 plaintiff cannot establish a Fifth Amendment violation where he or she "was never prosecuted for a crime" based on his incriminating testimony. *Id.* at 776. It made clear that "the mere use of compulsive questioning, without more" is not a constitutional violation but reserved any decision on "the precise moment when a 'criminal case' commences" for self-incrimination purposes. *Id.* at 766.

The Supreme Court still has yet to decide the "precise moment" the self-incrimination right attaches and can be violated. But Fourth Circuit precedent dictates that the right is not violated until the coerced statements are used against the speaker at a criminal trial.[2] *See, e.g.*,

---

[2] Decisions from the Third, Fifth, Sixth, and Eighth Circuits hold, or suggest those courts would hold, similarly. *See, e.g.*, *Renda v. King*, 347 F.3d 550, 559 (3d Cir. 2003) ("[I]t is the use of coerced statements during a criminal trial, and not in obtaining an indictment, that violates the Constitution."); *Murray v. Earle*, 405 F.3d 278, 285 (5th Cir. 2005) ("The Fifth Amendment privilege against self-incrimination is a fundamental trial right which

*United States v. Riley*, 920 F.3d 200, 205 (4th Cir. 2019) ("Even with regard to statements made under circumstances that would otherwise be viewed as coercive, the Self-Incrimination Clause is violated *only* if those statements are used in a criminal trial.") (citing *Chavez*, 538 U.S. at 767) (emphasis in original); *Burrell v. Virginia*, 395 F.3d 508, 513–14 (4th Cir. 2005) ("[Plaintiff] does not allege any *trial* action that violated his Fifth Amendment rights; thus, *ipso facto,* his claim fails on the [*Chavez*] plurality's reasoning.") (emphasis in original); *Riley v. Dorton*, 115 F.3d 1159, 1165 (4th Cir. 1997), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010) ("Any Fifth Amendment claim here thus fails, because [Plaintiff] never made a statement, much less a statement that was used at trial."). *But see Riley*, 920 F.3d at 207 ("The Fifth Amendment privilege against self-incrimination is violated *only* when compelled statements are used against the witness in a criminal *proceeding*.") (second emphasis added); *id.* at 205–06 (finding no Fifth Amendment violation where confession was used at a supervised-release revocation, explaining that revocation proceedings "are *not* part of the underlying criminal *prosecution*" and "are not criminal *proceedings*") (second and third emphases added). Here, Plaintiff has not shown, or even alleged, that his incriminating statements were used against him at a criminal trial. Accordingly, under the predominant view in this Circuit, any claim based on the violation of his self-incrimination rights fails.

This Court acknowledges that other Courts of Appeals have adopted a more flexible approach and found violations where the compelled incriminating statement was used in a

---

can be violated only *at* trial[.]"); *Maddox v. Davis*, 164 F. App'x 559, 560 (8th Cir. 2005) (affirming dismissal of § 1983 claim where plaintiff did not allege his incriminating statements "had been used against him in a criminal trial"); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 431 n.11 (6th Cir. 2005) ("The *Chavez* decision may leave room for a challenge to the use of coerced statements in a grand jury proceeding, however the thrust of the opinion rests on the view that the Fifth Amendment is a trial protection.").

pretrial proceeding leading up to a criminal trial. *See, e.g.*, *Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir. 2009) ("A coerced statement has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status."); *Vogt v. City of Hays, Kansas*, 844 F.3d 1235, 1246 (10th Cir. 2017) (recognizing Fifth Amendment violation where compelled statements were used in a probable cause hearing); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1027 (7th Cir. 2006) (use of confession at a probable cause hearing, bail hearing, and arraignment could violate the Fifth Amendment); *Best v. City of Portland*, 554 F.3d 698, 703 (7th Cir. 2009) (use at a pretrial suppression hearing could also constitute a constitutional violation) *Higazy v. Templeton*, 505 F.3d 161, 173 (2d Cir. 2007) (initial appearance that included bail determination was part of the "criminal case" for self-incrimination purposes). The Fourth Circuit has not yet decided whether a constitutional violation can occur when the incriminating statement is used at a pretrial hearing, but, even assuming it could, Plaintiff's claim still fails.

Plaintiff has alleged only that the information Defendant extracted from him "is being utilized against [him] in criminal proceedings." (Compl. 10.) But Plaintiff has offered no evidence concerning how or when the use of his allegedly coerced confession occurred. Thus, even if the Court were to assume that all of Plaintiff's factual allegations were true, no reasonable jury could find that any incriminating statements have been used against him in a "criminal case." This is fatal to any self-incrimination claim. *See Chavez*, 538 U.S. at 766; *Riley*, 920 F.3d at 205.

### 2.  **Involuntary Guilty Plea**

Plaintiff also alleges that Defendant pressured him to plead guilty to the criminal charges pending against him. (Compl. 10–11.) The Supreme Court has left open the possibility that a coerced confession can taint a subsequent guilty plea based on that confession such that the coercion violates the Due Process Clause and renders the guilty plea involuntary and open to challenge. *See Chambers v. State of Fla.*, 309 U.S. 227 (1940). Neither the Supreme Court nor the Fourth Circuit has yet decided whether such a tainted plea can give rise to liability under § 1983, but even assuming it could, there is insufficient evidence to support such liability here.

Plaintiff has not shown—or even alleged—that he actually pleaded guilty as a result of Defendant's alleged coercion or that the circumstances were such that a subsequent guilty plea would have been involuntary. *Cf. Winslow v. Smith*, 696 F.3d 716, 737–38 (finding no evidence that plaintiffs' guilty pleas were involuntary or unknowing, even where they opted to enter guilty pleas based on false evidence, because there was "no evidence that they did not understand the nature of the plea proceeding or that they entered their pleas involuntarily"). Consequently, Defendant is entitled to judgment on any claim based on Plaintiff's allegedly coerced guilty plea.

### 3.  **Free Speech**[3]

To the extent Plaintiff claims Defendant violated his free-speech rights under the First Amendment by compelling his confessions, that claim is foreclosed by recent Fourth Circuit precedent. *See English v. Clarke*, 90 F.4th 636 (4th Cir. 2024). In *English*, the court explicitly

---

[3] Free-speech rights, like the right against forced self-incrimination, are protected from state infringement by the Fourteenth Amendment's Due Process Clause. *See Stromberg v. California*, 283 U.S. 359, 368 (1931).

rejected the plaintiff's attempt to assert a § 1983 claim on the grounds that his coerced confession was compelled speech that violated of his First Amendment right to free speech, reasoning that he had "pointed to no court that has taken this view" and declining "to become the first." 90 F.4th at 648 (stating that "[c]oerced confessions generally provide the basis for a Fifth Amendment claim if the confession was proffered for use at a criminal trial," and "[t]he proper remedy for a coerced confession is suppression of the confession, not a separate First Amendment suit").[4] Under *English*, Plaintiff cannot succeed on a free-speech claim based on the facts of this case.

### 4. <u>Substantive Due Process</u>

"Coercive interrogations can violate the due process clause, but only if the methods employed were 'so brutal and so offensive to human dignity that they shock the conscience.'" *English*, 90 F.4th at 649. The standard to prove a substantive due process violation is "materially higher" than the standard for proving a Fifth Amendment violation. *Id.* (finding no due process violation where the interrogators placed the plaintiff in handcuffs and leg shackles, rejected his requests for his mother or an attorney, and kicked out his chair because "none of the methods alleged . . . shocks the conscience"). "Unlike the self-incrimination trial right, this freestanding substantive due process right is available outside of trial as well[.]" *Edmonds v. Oktibbeha Cnty., Miss.*, 675 F.3d 911, 916 (5th Cir. 2012).

---

[4] Note that, contrary to Defendant's assertion (*see* Def.'s Br. 10), *English* does not foreclose a § 1983 claim based on a self-incrimination violation because the *English* court did not consider—and did not purport to rule on— whether a plaintiff can ever bring an effective § 1983 claim based on a violation of the Fifth Amendment right against compelled self-incrimination. *See* 90 F.4th at 648.

A finding of coercion does not require actual violence toward the confessor; "a credible threat is sufficient." *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). Additionally, coercion can be mental, physical, or even economic. *See id.*; *Garrity v. State of N.J.*, 385 U.S. 493, 497 (1967). But "[t]he mere existence of threats, violence, implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997). Instead, "[t]he proper inquiry is whether the [confessor's] will has been 'overborne' or his capacity for self-determination critically impaired." *Id.* (citations and internal quotation marks omitted). In making this determination, the Court considers "the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Id.* (collecting cases).

Here, although Plaintiff's allegations that Defendant violated Plaintiff's due-process rights by coercing a confession via threats of violence against Plaintiff's daughter, if true, could theoretically support a substantive due process claim, Defendant's sworn declaration flatly contradicts Plaintiff's allegations and defeats any such claim. (*See* Nicholson Dec. ¶ 15.)

Had both parties submitted sworn statements supporting to their respective version of the facts, the Court would not be in a position to grant summary judgment. *See Pumphrey v. Coakley*, 684 F. App'x 347 (4th Cir. 2017) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ruling on a motion for summary judgment.") (quoting *Anderson*, 477 U.S. at 255); *Watson v. Brown*, 446 F. App'x 643, 645 (4th Cir. 2011) (vacating district court's grant of summary judgment where "it made a dispositive credibility determination on the basis of

- 14 -

competing affidavits"). Critically, however, Defendant's declaration was sworn under penalty of perjury, while Plaintiff's filings were not. And Plaintiff's allegations and unsworn statements are insufficient to defeat summary judgment. *Baker v. Corbin*, No. 7:16-CV-00271, 2017 WL 1378419, at *3 (W.D. Va. Apr. 12, 2017) ("The liberal construction afforded the pleadings of pro se litigants cannot be used as a mechanism for avoiding federal rules of evidence and civil procedure.") (collecting cases); *Mentzos v. Bureau of Prisons*, No. 3:19CV450, 2020 WL 5645818, at *2 (E.D. Va. Sept. 22, 2020) ("As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence."); *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004) ("[U]nsworn argument does not constitute evidence[.]"). Because Plaintiff has not put forth any admissible evidence from which the Court could conclude that genuine issues of material fact exist, the Court must grant summary judgment for Defendant on Plaintiff's substantive due-process claim as well. *See Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]").

### IV.

For the reasons discussed above, the Court will grant Defendant's motion (ECF No. 25) and dismiss this action.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 18th of September, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE